IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE A. PEARSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 2899 |
| AT & T PENSION BENEFIT PLAN, | ) Judge Ronald A. Guzmán |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Pearson ("Pearson") has brought this action to challenge the AT&T Pension Benefit Plan's ("Plan") denial of her claim for service credits and benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Before the Court are the parties' cross-motions for summary judgment, as well as plaintiff's motion to strike telephone transcripts from the administrative record. For the reasons provided in this Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment, denies plaintiff's cross-motion and denies plaintiff's motion to strike as moot.

### Facts[1]

In June 1980, Illinois Bell[2] hired Joyce Pearson as an administrative assistant. (R. at

---

[1]The following facts are undisputed and are taken from the Administrative Record and the parties' Local Rule 56.1 submissions in support of their cross-motions for summary judgment.

[2]During the relevant time period, Illinois Bell and its parent companies have been involved in a series of mergers, resulting in changes to the name of the company and the Plan. Those name changes are not relevant to this inquiry, and the Court, as the parties have done in their motions and memoranda, adopts the term "Illinois Bell" to refer to Illinois Bell and all of its parents and affiliates.

0336, 0356.) However, in November 1992, she was laid off. (*Id.*)

In September 1993, Ms. Pearson was hired by Manpower, a temporary employment agency. (R. at 0336, 0356, 0358.) From September 1993 to June 30, 2000, Ms. Pearson was employed by either Manpower or Temp Help and performed services as an administrative assistant for Illinois Bell. (R. at 0336, 0356, 0366, 0358; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10.)

On July 1, 2000, Ms. Pearson was rehired by Illinois Bell as a full-time employee. (R. at 0334, 0336, 0357.) At that point, Illinois Bell began to include her on the company payroll. (R. at 0351, 0358, 0377; Def.'s LR 56.1(a)(3) Stmt. ¶ 7.) She continued to do the same work she had been performing from September 1993 to June 30, 2000. (R. at 0366.)

In June 2003, Ms. Pearson contacted the SBC Pension and Savings Plan Service Center ("Service Center) and sought to "bridge" her previous service at the company for benefits purposes. (R. at 0358.) In support of this informal request, she provided details of her work history and stated that she had worked for Illinois Bell from 6/80 to 11/92, Temp Help/Manpower from 9/93 to 7/00, and SBC from 7/00 to the present and noted that "[t]he temp position was the same position that I took when brought back." (*Id.*)

On March 14, 2005, Joyce Pearson formally demanded that the Plan Claims Administrator issue service credit and benefits for the period during which she performed services for Illinois Bell through a temporary employment agency. (R. at 0356.) On June 8, 2005, the Plan Claims Administrator denied Ms. Pearson's claim based on its interpretation of the Ameritech Management Pension Plan, which was amended and restated as of 2002 and in effect at the time of the claim's denial in 2005 ("the 2002 Plan"). (R. at 0354.) In particular, the Administrator interpreted Section 3.1, entitled "Eligibility for Participation," which states that:

no individual will be considered an Eligible Employee nor will such an individual

2

be otherwise eligible to participate in or receive benefits under the plan during any period in which such individual is providing services to an Employer under contract, arrangement or understanding with either such individual as either an independent contractor or an employee of such agency or leasing organization . . . .

(*Id.*; *id.*, Attach. B, Ameritech Management Pension Plan.) The Plan Claims Administrator stated that "[o]nly an eligible employee of the Company is entitled to receive Pension Calculation Service ('PCS') and Net Credited Service ('NCS')." (R. at 0354.) Because Ms. Pearson was a contract employee with Illinois Bell from September 1993 until June 2000 and she was not on Ameritech's active payroll, the Plan Claims Administrator found that she was not an "Eligible Employee" or a "Participant" in the Plan during that period. (*Id.*) On August 9, 2005, Ms. Pearson appealed the ruling of the Plan Claims Administrator to the Benefit Plan Committee. (R. at 0366.)

On October 24, 2005, the Benefit Plan Committee denied the appeal. (R. at 0331.) In denying her claim, the Benefit Plan Committee relied on the language of two versions of the Plan. First, it relied on language from the 1993 Plan, *i.e.*, the one in effect when Ms. Pearson began providing services to Illinois Bell through Temp Help/Manpower. (R. at 0332.) The 1993 Plan defined "employee" as "any individual . . . who receives a regular and stated compensation . . . from a Participating company." (*Id.*) The Benefit Plan Committee found that under that definition, Ms. Pearson could not meet the definition of an employee because, during the period in question, she was not on SBC's payroll. (*Id.*)

Second, the Benefit Plan Committee also relied on language from the 2002 Plan, *i.e.*, the one in effect when her claim for benefits was denied. (*Id.*) Specifically, it relied on Section 3.1(a) of the 2002 Plan, the same provision relied on by the Plan Claims

3

Administrator, which provided that an individual will not be considered an "Eligible Employee" or "otherwise eligible to participate in or receive benefits under the plan" during any period in which he or she is "providing services to an Employer under contract, arrangement or understanding with either such individual or with an agency . . . that treats the individual as either an independent contractor or an employee of such agency." (*Id.*) The Benefit Plan Committee found that during the period in question, Ms. Pearson was a temporary/contract worker and thus, not an eligible employee. (*Id.*)

The Benefit Plan Committee relied on additional language from Section 3.1(a) of the 2002 Plan, which provided that "even if such individual is later determined (by judicial action or otherwise) to have been a common law employee of a Participating Company rather than an independent contractor or an employee of such agency or leasing organization," an individual who provided services to an Employer under contract or was treated as an employee by an agency was not an "Eligible Employee" or "otherwise eligible to participate in or receive benefits under the plan." (*Id.*) Based on this language, it concluded that it was not "necessary to make a determination as to whether she was a common-law employee because even if she was a common-law employee, she was still not entitled to status as a Participant during that time period." (R. at 0331.)

## Discussion

Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering cross-motions for summary judgment, we are obliged to

4

view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made." *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 939 (7th Cir. 2004).

"Benefit determinations are reviewed *de novo* unless the trustees of the plan have discretionary authority to determine eligibility." *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1437 (7th Cir. 1997). Where plan trustees have discretion to determine eligibility, benefit determinations are reviewed under an arbitrary and capricious standard. *Id.*

Plaintiff concedes that the deferential standard applies. The Plan states that the Plan Committee

> will have the following discretionary authority, powers rights and duties ... to determine conclusively for all parties all questions arising under the Plan, including the power to determine the eligibility for and entitlement to plan benefits of employees and the rights of Participants and other persons entitled to benefits under the Plan and their respective benefits, to make factual determinations, to have full discretionary authority to interpret the terms of the Plan and to remedy any ambiguities, inconsistencies or omissions of whatever kind.

(R. at 0056; *see also* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 3.)

The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action." *Trombetta*, 103 F.3d at 1438. Under this standard, "we do not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority," but "whether the administrator's decision was completely unreasonable." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). The court looks to the plain language of the plan and determines whether the terms in question are clear, and if the language is unambiguous, the inquiry need go no

5

further. *Id.* "Put simply, an administrator's decision will not be overturned unless it is downright unreasonable." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quotation omitted). If the "decision has rational support in the record," the court must uphold it. *Id.* (quotation omitted). Under such a deferential standard, a district court should limit its review to the administrative record. *Trombetta*, 102 F.3d at 1438 n.1.

Plaintiff argues that defendant's denial of her claim for service credit and benefits was *"downright unreasonable."* (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 3.) She contends the Plan's decision was arbitrary and capricious because it: (1) was based upon information not supported by the record, (2) relied upon Plan language that was not controlling, and (3) did not determine whether she was a common-law employee. (*Id.* 4-14.)

First, plaintiff contends that the administrative record does not support a finding that she was paid by a temporary employment agency. (Pl.'s Mem. Opp'n Summ. J. 6.) Plaintiff argues that the only evidence in the administrative record that supports a finding that she was paid by a temporary staffing agency are transcripts of telephone recordings, which are the subject of her motion to strike from the administrative record. (*See* Pl.'s Mot. Strike Trs. Admin. Record.)

When a court reviews a denial of benefits under the arbitrary and capricious standard, it focuses on the evidence before the administrator at the time of the final decision. *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 532 (7th Cir. 1986). In this case, when viewing the administrative record, which was submitted by defendant, in the light most favorable to plaintiff, and without relying upon the telephone

transcripts that are the subject of her motion to strike, no reasonable jury could find that plaintiff was an eligible employee because plaintiff admitted that she provided services to Illinois Bell through a temporary staffing agency during the disputed period and was rehired by Illinois Bell in July 2000. In her June 17, 2003 submission to the Pension and Savings Plan Service Center, plaintiff stated that she provided services to Illinois Bell through "Temp Help/Manpower" from September 1993 to July 2000 and referred to this employment as a "temp position." (R. at 0358.) Further, during the administrative process, plaintiff argued that she was applying for benefits for the period of time during which she was "a contractual temporary employee," a "contractual employee," or "a contractual employee through Manpower." (R. at 0349, 0356, 0375.) Based on these statements that were part of the administrative record, the Court holds that it was not arbitrary and capricious for the Benefit Plan Committee to conclude that plaintiff was employed by a temporary staffing agency, not Illinois Bell, during the disputed period and that she was therefore ineligible for service credits and benefits.

Second, plaintiff argues that defendant's denial is arbitrary and capricious because the Benefit Plan Committee, in reviewing the decision of the Plan Claims Administrator, relied on the 1993 Plan, which she says is not controlling. Absent any language suggesting ambiguity in the timing of the vesting of benefits, the plan in effect at the time the benefits were denied controls. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). In this case, plaintiff's claim for benefits was denied in 2005, and neither party argues that the 2002 Plan, which was in effect in 2005, is ambiguous with regard to the timing of the vesting of benefits. Thus, the 2002 Plan controls.

However, while the Committee stated that plaintiff failed to meet the definition of "employee" under the 1993 Plan because she was not an individual "who receives a regular and stated compensation . . . from a Participating company," it also denied plaintiff's claim based on the relevant language of the 2002 Plan. Regardless of the Committee's reliance on the 1993 Plan, its reliance on the 2002 Plan determined the outcome of her appeal. Specifically, it relied on Section 3.1(a), which provided that an individual will not be considered an "Eligible Employee" or "otherwise eligible to participate in or receive benefits under the plan" during any period in which he or she is "providing services to an Employer under contract, arrangement or understanding with either such individual or with an agency . . . that treats the individual as either an independent contractor or an employee of such agency." (R. at 0332.) Applying the language to the facts at hand, the Committee stated:

> [R]ecords indicate that Ms. Pearson was originally hired by Illinois Bell Telephone Company on June 11, 1980. On November 13, 1992, Ms. Pearson left the company, due to a workforce reduction. In September 1993 she was hired as a temporary/contract worker and worked in this capacity until June 30, 2000. On July 1, 2000, Ms. Pearson was hired as a full time Ameritech employee.

(*Id.*) The Committee concluded that "since Ms. Pearson was not an eligible employee during the time she was a temporary/contract worker, your appeal on behalf of Ms. Pearson to receive service credit and benefits for her seven and a half years as a temporary/contract worker is denied." (*Id.*) The Court holds that the Committee clearly relied upon the controlling plan language in denying plaintiff's claim.

Third, plaintiff contends that defendant's denial of service credits and benefits was arbitrary and capricious because the Benefit Plan Committee did not consider

8

whether she was a common-law employee. To support this argument, plaintiff cites *Lister v. Stark*, 942 F.2d 1183, 1188-89 (7th Cir. 1991), for the proposition that "a denial of benefits under ERISA may be arbitrary and capricious if an administrator fails to evaluate *all* relevant evidence before it." (Pl.'s Mem. Opp'n Summ. J. 12 (emphasis in original).) To the contrary, *Lister* states that an administrator "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Reilly v. Blue Cross & Blue Shield United of Wis.*, 846 F.2d 416, 420 (7th Cir. 1988)). Further, *Lister* holds that a decision will be overturned only when the record establishes that the administrator "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise." *Id.* (quotation omitted).

Because the Court holds that the Benefit Plan Committee considered the relevant data and articulated its reasoning, *Lister* is not dispositive. Section 3.1 of the 2002 Plan clearly states that "even if such individual is later determined (by judicial action or otherwise) to have been a common law employee of a Participating Company rather than an independent contractor or an employee of such agency or leasing organization," an individual who provides services to an Employer under contract or was treated as an employee by an agency is not an "Eligible Employee" or "otherwise eligible to participate in or receive benefits under the plan." (R. at 0022.)

Based on this unambiguous language, the Court holds that it was not arbitrary and capricious for the Benefit Plan Committee to explain that whether plaintiff was a

9

common-law employee was simply irrelevant to her claim. Even if the Committee were to have found that she was a common-law employee, she still would not have been entitled to service credit and benefits for the seven-and-one-half years that she provided service to Illinois Bell through a temporary staffing agency.

Plaintiff also cites *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997), in arguing that the denial of benefits in this case was arbitrary and capricious. In that case, the Ninth Circuit held that Microsoft employees, who were classified as independent contractors, should have been granted common-law employee status where the benefit plan at issue expressly included common-law employees. *Id.* at 1010. In contrast to *Vizcaino*, in this case, the unambiguous language in Section 3.1(a) of the 2002 Plan expressly excludes common-law employees, and, for the reasons discussed above, the Benefit Plan Committee's application of the plan language to the facts in the record was reasonable.

Finally, plaintiff makes obscure references to "sham" transactions, contending that "Illinois Bell paid a third party which then delivered a paycheck to Ms. Pearson." (Pl.'s Mem. Opp'n Summ. J. 8.) Because the Court's review is limited to the administrative record and the record is devoid of any support for these accusations, the Court holds that this argument lacks merit.

In sum, the Benefit Plan Committee's denial of plaintiff's claim was a reasonable decision based on the controlling plan language and the facts in the administrative record. Accordingly, the Court grants defendant's motion for summary judgment and denies plaintiff's cross-motion. The Court denies plaintiff's motion to strike telephone transcripts from the administrative record as moot.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [doc. no. 37-1], denies plaintiff's motion for summary judgment [doc. no. 45-1] and denies as moot plaintiff's motion to strike transcripts from the administrative record [doc. no. 40-1]. This case is hereby terminated.

SO ORDERED.                                  ENTERED: 9/28/07

HON. RONALD A. GUZMAN
United States District Judge